IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ROBERT ALEXANDER SIGOUIN, | ) | CIV. NO.  08-00323 JMS/KSC |
| | ) | CR. NO.  05-00248 JMS |
| Petitioner, | ) | |
| | ) | ORDER DENYING MOTION TO |
| vs. | ) | VACATE, SET ASIDE, OR |
| | ) | CORRECT SENTENCE UNDER 28 |
| UNITED STATES OF AMERICA, | ) | U.S.C. § 2255 |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

### ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255

Before the court is Petitioner Robert Alexander Sigouin's ("Sigouin")

Motion to Vacate, Set Aside, or Correct his Sentence Under 28 U.S.C. § 2255.

Sigouin argues that he received ineffective assistance of counsel from his original

counsel and two standby counsel and that his sentencing was infected with various

errors.  For the following reasons, the court DENIES Sigouin's motion.

## I. BACKGROUND

### A.     The Offense Conduct

On May 29, 2005, Virginia M. Rosas Guerrero ("Guerrero") was

arrested after arriving at the Honolulu International Airport in possession of

approximately 295 grams of heroin hidden in her crotch area.[1]  Presentence

Investigative Report ("PSR") ¶¶ 13-16.  In a post-arrest statement, Guerrero

informed agents that she had traveled from Mexico to Hawaii more than ten times

since December 2004 with drugs.  She further explained that she delivered drugs

to Sigouin each time that she had previously traveled to Hawaii, and that on the

date of her arrest she was carrying the heroin in two packages.  The larger package

(approximately 245 grams) was to be delivered to Sigouin and the smaller package

(approximately 50 grams) was to be delivered to Kevin Patrick Cash.  *Id.* ¶¶ 16-18.

Guerrero further explained that after arrival at her hotel, she was to

contact her Mexican source, Ruby Perez.  Perez in turn would call Sigouin and

Cash to arrange separate meetings with Guerrero for delivery of the heroin.  *Id.*

¶ 19.  Guerrero agreed to cooperate with the agents, called Perez, and was told to

meet Sigouin in the lobby of her hotel at 3:15 p.m.  Sigouin was subsequently

arrested upon his arrival at the hotel.  *Id.* ¶ 20.[2]

A search warrant was executed at Sigouin's residence on June 3,

2005.  From his bedroom, agents recovered $26,790, 41 rounds of .22 caliber

---

[1]  Guerrero, originally charged with Sigouin and Cash in a May 31, 2005 criminal
complaint, entered a plea of guilty pursuant to a plea agreement on September 20, 2005.

[2]  Cash, like Sigouin, was arrested after Guerrero made arrangements through Perez to
meet him at Honolulu's Ala Moana Shopping Center.  PSR ¶ 21.

ammunition, an open switchblade, a small amount of heroin, and various items of drug paraphernalia. *Id*. ¶¶ 23-24.

On March 15, 2006, Sigouin and co-defendant Cash were charged in a seven-count Fourth Superseding Indictment. Sigouin was charged with (1) conspiracy to distribute and possess with intent to distribute 100 grams or more of heroin from a date unknown up to May 29, 2005 (count 1); (2) attempted possession with intent to distribute 100 grams or more of heroin on May 29, 2005 (count 2); (3) criminal forfeiture as a result of the offenses alleged in counts 1 and 2 (count 6); and (4) possession of ammunition in and affecting commerce while being an illegal alien in the United States (count 7).

## B.   The Sentencing Hearing

Guerrero and Sigouin testified during the sentencing hearing. Guerrero testified that she traveled to Hawaii two times per month during the months of January, February, March, April, and May 2005, and that on each of these occasions she provided Sigouin with drugs. Gov't Resp. Ex. C at 11. She explained that on one of these trips Sigouin weighed the drugs in her presence on a digital scale, and observed that the total amount was over 400 grams, although she could not recall the exact amount. *Id*. at 12-16, 24, 26. Guerrero testified that the smallest amount of drugs that she delivered to Sigouin was "a little bit bigger

3

than half" of the delivery that weighed in excess of 400 grams. *Id*. at 27.  She

further explained that she collected between $5,000 and $18,000 from Sigouin as

payment for the drugs during her trips to Hawaii.  *Id*. at 26.

Sigouin proffered that he paid $140 per gram for the heroin that he

purchased.[3]  *Id*. at 35-36.  He also testified that he was a heavy user of heroin, and

that he smoked "about 50 grams a month, to tell you the truth."  *Id*. at 66.

In calculating the amount of heroin Guerrero delivered to Sigouin, the

court first applied a conservative estimate that Guerrero traveled to Hawaii to

deliver heroin to Sigouin eight times.  *Id*. at 62-63.  The court further found that on

May 29, 2005, Guerrero was to deliver approximately 295 grams to Sigouin,[4] and

that Guerrero credibly testified that she delivered one package to Sigouin

weighing at least 400 grams.  As for the remaining six deliveries, the court applied

a conservative estimate of 200 grams per trip, for an eight trip total of 1,895

grams.  *Id*. at 62-65.  From this amount the court subtracted 250 grams, the amount

of heroin smoked by Sigouin during the five-month period that Guerrero delivered

heroin to him.  *Id*. at 68.  As a result, the court found Sigouin responsible for a

---

[3]  Immigration and Customs Enforcement Special Agent Kapi Muraoka, in an October 5, 2006 sworn declaration, stated that as of May, 2005, heroin sold for $1,800 to $2,000 per ounce (28.35 grams) in Hawaii.  Doc. No. 298.

[4]  This amount should have been 245, not 295, grams.  The error, however, does not impact the base offense level 32 applied at sentencing.

total of 1,645 grams based on the conduct underlying the Fourth Superseding Indictment and all relevant conduct.  Given this amount of heroin, the court applied a base offense level 32 under United States Sentencing Guideline ("Guideline") § 2D1.1,[5] a two-level decrease for acceptance of responsibility under Guideline § 3E1.1, and a two-level "safety valve" decrease under Guideline § 5C1.2, for a total offense level 28, criminal history category I, with an advisory Guideline range of 78 to 97 months.  On March 23, 2007, after hearing from Sigouin and the government, the court imposed a sentence of 84 months incarceration to be followed by five years of supervised release.  Judgment was entered on April 2, 2007.  Sigouin failed to file a notice of appeal.[6]

## C.    Procedural History

Sigouin, originally charged by criminal complaint on May 31, 2005, was initially represented by court-appointed attorney Richard Kawana.  On January 5, 2006, Sigouin filed a pro se motion notifying the court that he was "terminating" Kawana as his counsel.  Doc. No. 107.  That motion was granted on

---

[5]  Offense level 32 applies to at least 1 kilogram of heroin but less than 3 kilograms of heroin.  Guideline § 2D1.1.

[6]  On March 30, 2007, Sigouin filed a Motion to Correct or Reduce a Sentence Pursuant to Federal Rule of Civil Procedure 35(a), arguing that the court incorrectly determined the total amount of heroin attributable to him at sentencing.  Doc. No. 342.  The court denied that motion on April 4, 2007.

January 6, 2006, and Glenn D. Choy was appointed to represent Sigouin on January 17, 2006.  Doc. Nos. 109, 117.[7]  While represented by Choy, Sigouin filed a series of pro se motions with the court.  *See* Doc. Nos. 122, 128, 129, & 132.  On February 9, 2006, the court ordered that Sigouin be examined to determine his competency to stand trial.  Doc. No. 135.  The minutes from a February 16, 2006 status conference reflect, for the first time, Sigouin's request to proceed pro se; this request was followed by a pro se "notice" to the court that Choy was not "authorized" to represent Sigouin any further.  Doc. Nos. 139, 143.  On February 24, 2006, Choy filed a motion seeking leave for Sigouin to proceed pro se.  Doc. No. 148.

On March 23, 2006, after receiving Dr. Marvin Acklin's mental competency evaluation, the court found that Sigouin was competent to stand trial.  Doc. No. 184.  The court then conducted the relevant inquiry pursuant to *United States v. Faretta*, 422 U.S. 806 (1975), and permitted Sigouin to proceed pro se with Choy acting as standby counsel.  *Id.*

After ruling on numerous motions filed by Sigouin and the government, jury selection commenced on April 25, 2006.  The following day,

---

[7]  Attorney Jerry Wilson was originally appointed to replace Kawana, but he withdrew based on a conflict of interest.

Sigouin waived his right to trial and entered a plea of guilty as to each count of the Fourth Superseding Indictment.  Gov't Resp. Ex. B.  At Sigouin's request, the court removed Choy as standby counsel and appointed Brandon K. Flores as new standby counsel.  Doc. No. 265.  Flores remained as Sigouin's standby counsel through sentencing.

After sentencing, Sigouin was informed of his appellate rights, including his right to have counsel appointed to represent him free of charge. Gov't Resp. Ex. C at 87.  When asked by the court if he wanted an attorney to prosecute an appeal on his behalf, Sigouin responded, "not at this moment." *Id*. When asked if he wanted Flores to help file a notice of appeal, Sigouin stated that he had not decided if he wanted to appeal, and that if he did decide to prosecute an appeal, "I'd like to file it myself." *Id*. at 88.  Although Sigouin agreed to speak with Flores regarding a possible appeal, he made it clear that he did not want Flores to represent him for the purposes of bringing an appeal.

## II.  ANALYSIS

Sigouin's claims can be broken down into two major categories: ineffective assistance of counsel and errors relating to his sentencing.  As to his Sixth Amendment claims, Sigouin alleges that Kawana and standby counsel Choy provided ineffective assistance of counsel based on their failure to inform him that

7

his sentence would be based on all relevant conduct, not just that conduct alleged in the counts to which he entered pleas of guilty.  Sigouin further alleges that Flores provided ineffective assistance of counsel based on his failure to advise Sigouin to appeal from the sentence imposed.  As to his sentencing claims, Sigouin alleges that (1) the prosecution engaged in misconduct by presenting evidence to increase his Guideline offense level based on relevant conduct; (2) his sentence was based on improper hearsay and the evidence at the sentencing hearing was insufficient to justify the court's conclusions at sentencing; and (3) the court erred in denying his Rule 35(a) motion relating to his sentence.  The court first addresses whether Sigouin is entitled to an evidentiary hearing on his § 2255 motion, and then addresses his various contentions.[8]

## A.      Evidentiary Hearing

A court should hold an evidentiary hearing on a § 2255 motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255; *see also United States v. Keller*, 902 F.2d 1391, 1395 (9th Cir. 1990) ("To warrant an evidentiary hearing, a petitioner must

---

[8]  In light of the court's holding that Sigouin's claims lack merit or are procedurally barred, and because § 2255's time limit is not jurisdictional, the court does not reach the government's argument that Sigouin's motion was filed outside of § 2255's one-year time limit. *See Pough v. United States*, 442 F.3d 959 (6th Cir. 2007); *Benn v. Greiner*, 402 F.3d 100 (2d Cir. 2005); *Tacata v. United States*, 2007 WL 1303018 (D. Haw. May 2, 2007).

'make specific factual allegations which, if true, would entitle him to relief.'")

(quoting *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982)).  In the

Ninth Circuit, this standard requires an evidentiary hearing where "the movant has

made specific factual allegations that, if true, state a claim on which relief could be

granted."  *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984).  A

hearing is not necessary if the "allegations, when viewed against the record, do not

state a claim for relief or are so palpably incredible or patently frivolous as to

warrant summary dismissal."  *United States v. Leonti*, 326 F.3d 1111, 1116 (9th

Cir. 2003) (citing *Schaflander*, 743 F.2d at 717) (internal quotation signals

omitted); *see also United States v. Donn*, 661 F.2d 820, 825 (9th Cir. 1981)

(stating that only when the petitioner has "made reasonably plausible factual

allegations that state a claim on which relief could be granted" must the court hold

a hearing).  Conclusory statements in a § 2255 motion are insufficient to require a

hearing.  *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).

        After a careful review of the record, the court determines that Sigouin

is not entitled to an evidentiary hearing.

///

///

///

9

**B.     Ineffective Assistance of Counsel**

*1.     Choy*

Sigouin claims that prior to entering his pleas of guilty, Choy failed to inform him that his sentence could be increased based on a consideration of relevant conduct under Guideline § 1B1.3.  Even assuming the truth of this allegation, as standby counsel Choy could not have provided ineffective assistance of counsel under the Sixth Amendment.

The Sixth Amendment guarantees the right to effective assistance of counsel at all critical stages of a criminal proceeding.  *United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir. 1997).  A petitioner demonstrates ineffective assistance of counsel by showing that: (1) his counsel's performance was objectively deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668 (1984).

The Sixth Amendment, however, does not protect a pro se defendant from his own shortcomings.  Having affirmed that he wanted to represent himself, Sigouin may not now claim "that the quality of his own defense amounted to a denial of 'effective assistance of counsel.'"  *Faretta*, 422 U.S. 806 at 834 n. 46. Further, there is no right to hybrid representation -- that is, Sigouin did not have a Sixth Amendment right to have Choy act as his standby counsel.  *United States v.*

*Kienenberger*, 13 F.3d 1354, 1356 (9th Cir. 1994).  Having made the decision to

proceed pro se, and absent a constitutional right to standby counsel, Sigouin's

claim against Choy fails as a matter of law.  *See United States v. Cochrane*, 985

F.2d 1027 (9th Cir. 1993) (rejecting as a matter of law that standby counsel

provided ineffective assistance of counsel); *Williams v. Stewart*, 441 F.3d 1030,

1047 n.6 (9th Cir. 2006) (stating that the defendant did not make a free-standing

claim that standby counsel was ineffective, "nor could he" given his choice to

proceed pro se); *Wilson v. Parker*, 515 F.3d 682, 697 (6th Cir. 2008) ("To the

extent [standby counsel] failed to act during trial, Wilson merely suffered the

consequences of his decision to proceed pro se."); *Simpson v. Battaglia*, 458 F.3d

585, 597 (7th Cir. 2006) ("[T]he inadequacy of standby counsel's performance,

without the defendant's relinquishment of his *Faretta* right, cannot give rise to an

ineffective assistance of counsel claim under the Sixth Amendment."); *United*

*States v. Schmidt*, 105 F.3d 82, 90 (2d Cir. 1997) ("Absent a constitutional right to

standby counsel, a defendant generally cannot prove standby counsel was

ineffective."); *United States v. Taylor*, 933 F.3d 307, 312 (5th Cir. 1991) (finding

that the assistance provided by standby counsel cannot qualify as the assistance of

counsel under the Sixth Amendment).[9]

### 2.   *Kawana*

Sigouin likewise claims that at some point prior to his termination on January 6, 2006, Kawana failed to inform Sigouin that relevant conduct could be considered at sentencing.  As a result, Sigouin claims that he believed that his Guideline base offense level would be several levels lower than ultimately determined by the court.  Again, even assuming the truth of this allegation, Sigouin's argument fails.

Even if Kawana offered objectively deficient advice regarding the application of relevant conduct at sentencing, Sigouin cannot prove that this advice prejudiced him in any manner.  At the time he was represented by Kawana, Sigouin rejected any government plea offer.  Instead, he insisted on representing himself.  And once he knowingly waived his right to counsel and elected to proceed pro se, Sigouin accepted the responsibility for his full defense, including

---

[9] The Ninth Circuit has not decided whether a pro se defendant may ever challenge a standby counsel's performance as deficient under *Strickland*.  *See United States v. Cochrane*, 985 F.2d 1027, 1029 n.1 (9th Cir. 1993).  The Second Circuit has suggested that it might consider such a claim  where "standby counsel held that title in name only, and, in fact acted as the defendant's lawyer throughout the proceedings[.]"  *United States v. Schmidit*, 105 F.3d 82, 90 (2d Cir. 1997).  Even if the Ninth Circuit would recognize such an exception to the *Faretta* rule, it would not apply in this case.  From this court's own observations in court and based on a review of the record, it is clear that Choy played the traditional role of a standby counsel and that Sigouin was in fact proceeding pro se.

an understanding of the United States Sentencing Guidelines.  Accordingly, any

Sixth Amendment claim that Sigouin could have made against Kawana was

extinguished with Sigouin's decision to represent himself and his subsequent

decision to enter pleas of guilty.  In other words, the quality of defense of which

Sigouin complains is his own, not Kawana's.[10]

### 3.    *Flores*

Sigouin next claims that Flores provided ineffective assistance of

counsel because Flores failed to advise him to file a notice of appeal.  Again, even

assuming the truth of this allegation, Sigouin is entitled to no relief.

After sentencing, when asked by the court if he wanted an attorney to

prosecute an appeal on his behalf, Sigouin responded, "not at this moment."  Gov't

Resp. Ex. C at 87.  When asked if he wanted Flores to help file a notice of appeal,

Sigouin stated that he had not decided if he wanted to appeal, and that if he did

decide to prosecute an appeal, "I'd like to file it myself."  *Id*. at 88.  Further, in his

---

[10]  The court is not holding that a former counsel of a pro se defendant is always insulated from Sixth Amendment claims.  For example, had Sigouin entered pleas of guilty based on a prior attorney's objectively deficient advice, and Sigouin determined to proceed pro se after the pleas were entered, the court would view this matter differently.  Here, Sigouin terminated Kawana based on his view that Kawana was not being truthful with him and that Kawana was providing ineffective assistance of counsel.  Doc. No. 107.  Several months *after* Kawana's removal from the case, and after trial began, Sigouin decided to enter pleas of guilty while proceeding pro se.  Under these facts, Sigouin is clearly complaining about his own inadequacies, not those of his prior counsel.

13

motion Sigouin states that he did not file a notice of appeal because "I was a pro-

se defendant, confused and very disappointed in the hypocrisy of the denial and

thought that a treaty transfer would be the best solution.  But the transfer was

denied."  Section 2255 Motion at 11 (spelling corrections included).

Having decided to represent himself, and specifically stating if he

appealed he would "like to file it myself," Sigouin cannot now complain about any

inadequacies of standby counsel.  *Faretta*, 422 U.S. at 834 n. 46.

## C.    Claims Relating to Sentencing

### 1.    *Prosecutorial Misconduct and Relevant Conduct*

Sigouin argues that the prosecution engaged in "prosecutorial

misconduct or vindictive prosecution" by presenting evidence at sentencing to

increase his Guideline offense level based on relevant conduct.  He argues that the

Fourth Superseding Indictment charged him in relation to only approximately 245

grams of heroin, yet his offense level was increased based upon the court's finding

of relevant conduct.  Thus, according to Sigouin, "the indictment was meant to

mislead and deceive the defendant."  Section 2255 Motion at 6.  This claim is

meritless.

"In sentencing a defendant convicted of conspiracy to distribute a

controlled substance, a district court may not automatically count as relevant

conduct the entire quantity of drugs distributed by the conspiracy." *United States*

*v. Banuelos*, 322 F.3d 700, 704 (9th Cir. 2003) (citing *United States v.*

*Garcia-Sanchez*, 189 F.3d 1143, 1147 (9th Cir. 1999)); *see* Guideline

§ 1B1.3(a)(1)(B) (describing the relevant conduct for determining the guideline

range for conspiracy to commit an offense).  "Rather, the court must find the

quantity of drugs that either (1) fell within the scope of the defendant's agreement

with his coconspirators or (2) was reasonably foreseeable to the defendant."

*Banuelos*, 322 F.3d at 704 (citing *United States v. Gutierrez-Hernandez*, 94 F.3d

582, 585 (9th Cir. 1996)).  The prosecution, by seeking inclusion of Sigouin's

relevant conduct at sentencing, was simply following established sentencing

procedure.  That the Fourth Superseding Indictment only alleged approximately

245 grams of heroin is irrelevant; proceeding pro se, Sigouin was responsible for

understanding the law and application of the Guidelines -- his failure to do so

speaks to his inadequacies as his own counsel, not government misconduct.

### 2.    *The Sentencing Hearing and Hearsay*

Sigouin next attacks the court's conclusions as to drug quantity at

sentencing.[11]  In doing so, he makes various claims, including that Guerrero's

---

[11]  Sigouin also appears to argue that the government failed to provide him with evidence supporting the drug quantity prior to sentencing.  This argument is frivolous.  In its July 14, 2006
(continued...)

15

testimony during the sentencing hearing was not credible, that the court

considered hearsay in considering her testimony, and that the testimony did not

support the court's findings by a preponderance of the evidence.[12]

"The applicable sentence range for . . . drug trafficking . . . depends

upon the amount of drugs involved.  Where the amount of drugs seized does not

reflect the scale of the offense, the district court may approximate the quantity of

the drugs."  *United States v. Culps*, 300 F.3d 1069, 1076 (9th Cir. 2002) (internal

citation omitted); *see also* Guideline § 2D1.1, application note 12 ("Where there is

no drug seizure or the amount seized does not reflect the scale of the offense, the

---

[11](...continued)
sentencing statement, the government objected to the draft PSR's "refusal to attribute clear
relevant conduct, pursuant to Section 1B1.3, attributable to Defendant Sigouin and its
recommendation in paragraph 39 for a base offense level of 26."  Doc. No. 270 (attached to the
PSR).  The government specifically argued that Sigouin should be held responsible for the full
amount of heroin delivered to him by Guerrero.  The government attached to its sentencing
statement records relating to Guerrero's airline travel to Hawaii, Guerrero's hotel stays in
Hawaii, and telephone calls made between Sigouin and Perez.  In an October 6, 2006 second
supplemental sentencing statement, the government set forth in detail its evidence regarding
relevant conduct calculations, and attached as Exhibits the testimony of Guerrero and Griselda
Medina from the Cash trial, along with Guerrero's and Medina's reports of investigation.  Doc.
No. 298 (attached to the PSR).  The court determined that Sigouin had a right to cross-examine
Guerrero (as he was not present during the Cash trial), and thus permitted her testimony and
cross-examination during Sigouin's sentencing.  In sum, Sigouin received full disclosure prior to
sentencing, and was afforded the right to cross-examine Guerrero and to testify on his own behalf
during his sentencing hearing.

[12] Although not clear, Sigouin may be arguing that the court should have used a clear and
convincing standard, not a preponderance standard, to determine drug quantity.  This argument is
foreclosed by *United States v. Harrison-Philpot,* 978 F.2d 1520 (9th Cir. 1992).

court shall approximate the quantity of the controlled substance.").

> Approximations of drug quantity must meet three criteria:
>
> First, as with all factors which increase a defendant's offense level, the government is required to prove the approximate quantity by a preponderance of the evidence. The district court must conclude that the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible. Second, the information which supports an approximation must possess sufficient indicia of reliability to support its probable accuracy. Third, since a defendant's sentence depends in large part upon the amount of drugs attributable to his conduct, and approximation is by definition imprecise, the district court must err on the side of caution in calculating approximated drug quantity.

*Culps*, 300 F.3d at 1076 (internal citation omitted). The court applied this standard in determining that Sigouin was responsible for a total of 1,645 grams of heroin.

The court reached its drug quantity conclusion after holding an evidentiary hearing and finding that Guerrero delivered heroin to Sigouin on eight occasions. On May 29, 2005, Guerrero was to deliver over 200 grams to Sigouin, and Guerrero credibly testified that on another occasion she delivered a package to Sigouin containing at least 400 grams of heroin. Based on Guerrero's testimony, the court applied a conservative estimate of 200 grams of heroin for the remaining six trips, for an eight-trip total of 1,895 grams of heroin. The court then subtracted 250 grams (representing the amount of heroin personally used by Sigouin) to arrive

17

at 1,645 grams.

Contrary to Sigouin's allegations, the court's conclusions were not dependent on hearsay,[13] and the court found that Guerrero was a credible witness. Guerrero provided specific testimony as to her direct dealings with Sigouin in the past, including evidence relating to the number of deliveries that she made to Sigouin, that one delivery was weighed to be at least 400 grams, the size of the packages she delivered in relation to the one containing at least 400 grams, and the amount of money that she collected from Sigouin.  Based on this evidence, the court reached a conservative approximation as to the amount of heroin that fell within the scope of Sigouin's agreement with Guerrero.[14]

### 3.    The Rule 35(a) Motion

Next, Sigouin claims the court erred in denying his Federal Rule of Criminal Procedure 35(a) motion.  Again, the court rejects this claim.

On March 30, 2007, one week after sentencing, Sigouin filed his Rule

---

[13]  In any event, "hearsay is admissible at sentencing, so long as it is accompanied by some minimal indicia of reliability."  *United States v. Littlesun*, 444 F.3d 1196, 1200 (9th Cir. 2006) (internal quotation marks omitted).

[14]  Sigouin also complains that his Guideline offense level was increased for the possession of a dangerous weapon (a switchblade) pursuant to Guideline § 2D1.1(b)(1).  In fact, the court sustained an objection to this adjustment after Sigouin submitted evidence showing that it was clearly improbable that the possession of the switchblade was connected with the offense. Gov't Resp. Ex. C at 48.

35(a) motion arguing that the court incorrectly calculated the relevant conduct for his offense.  The court denied this motion on April 4, 2007, finding that because the court did not impose a sentence in error, it was without jurisdiction to reconsider Sigouin's sentence.  *See* Doc. No. 344.

The court again rejects Sigouin's arguments.  First, as set forth above, there was no error at sentencing.  Second, as set forth in the court's April 4, 2007 Order, the court was without jurisdiction to reconsider his sentence.

### III.  <u>CONCLUSION</u>

For the foregoing reasons, the court DENIES Sigouin's Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, November 10, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Sigouin v. United States*, Civ. No. 08-00323 JMS/KSC, Cr. No. 05-00248 JMS, Order Denying Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255